IN THE UNITED STATES DISTRICT COURT
FOR ___ALASKA___

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF:<br>**Frontier Suites Hotel, 9400 Glacier Hwy Juneau Alaska Rooms 2143, 2205** hereafter referred to as the **TARGET HOUSE** | Case No. 1:21-MJ-00054-MMS<br> May 11 2021 |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Kevin Horne, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.  I make this affidavit in support of an application to search Frontier Suites Hotel, 9400 Glacier Hwy Juneau Alaska Rooms 2143, 2205, hereafter referred to as the **TARGET Rooms**.

2.  Based on my training and experience and the facts as set forth in this affidavit, I believe there is probable cause to search the TARGET ROOM (as described in Attachment A) for evidence, fruits, instrumentalities, and proceeds of violations of Title 21, United States Code § 841(a)(1).

### JURISDICTION

3.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. See 18 U.S.C. § 2703(a), 2703(b)(1)(A) & 2703 (c)(1)(A). Specifically, the Court is a "district court of the United States" that "has jurisdiction over the offenses being investigated". 18 U.S.C. § 2711(3)(A)

### AGENT'S BACKGROUND



May 11 2021

4. I am a U.S. Postal Inspector employed by the Seattle Division of the U.S. Postal Inspection Service, specifically in the Anchorage Domicile. I am a sworn federal law enforcement officer empowered to investigate criminal activity involving or relating to the United States Postal Service and/or United States Mail. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) Possession with Intent to Distribute a Controlled Substance, and Title 21, United States Code, Section 843(b), Use of a Communication Facility to Facilitate the Commission of a Federal Drug Felony.

5. I am a U.S. Postal Inspector and have been so employed since April of 2017. I attended and graduated from a three-month Basic Inspector Training (BIT) academy operated by the United States Postal Inspection Service (USPIS) in June 2017. While attending the BIT academy, I received training and instruction on investigating federal crimes that use the U.S. Mail including but not limited to the sending of illegal drugs through the U.S. Mail, robbery and burglary of postal facilities, destruction of government property, theft of U.S. Mail, possession of stolen U.S. Mail, mail and bank fraud, identity theft, and counterfeit personal checks and identifications.

6. Prior to my employment with the USPIS, I was employed for eight years by the Federal Air Marshal Service (FAMS) as a Federal Air Marshal (FAM). While assigned to the FAMS, I served as team leader on domestic and international flight missions. From 2010 to 2011, I was assigned to the Visible Intermodal Prevention and Response Team (VIPR). After my assigment to the VIPR Team I was assigned to the Mission Operation Center where I served as a watch officer from 2016 to 2017.

7. In May 2008 I received a bachelor's degree in Criminal Justice from Virginia Wesleyan College in Virginia Beach, VA. The following information is based on my own knowledge, information obtained from other law enforcement agents and officers, and from specific sources as set forth herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.


May 11 2021

8. During the course of your affiant's law enforcement career, your affiant has written and/or executed dozens of search and seizure warrants for narcotics, dangerous drugs, and related records and has assisted in the seizure proceeds and/or assets derived from such illegal activity. I have experience, as have other members of the investigating team, in debriefing defendants, witnesses, informants, and others having experience in the gathering, spending, converting, transporting, distributing and concealing of the proceeds derived from narcotic trafficking.

9. I have participated in or executed dozens of search and seizure warrants with respect to the manufacturing and distribution of controlled substances or the investigation of money laundering, I have supplied information to support affidavits and/or sworn to affidavits for search and seizure warrants in these investigations. These search and seizure warrants have authorized the search of locations ranging from the residences and vehicles of drug traffickers and their co-conspirators to houses and structures used in the manufacturing of controlled substances; and the seizure of drug related assets pursuant to Title 21, United States Code, Section 881. Items searched for and recovered in these location have included cocaine, methamphetamine, heroin, marijuana, US currency, precious metals, financial instruments, bank accounts, stock portfolios, money market accounts, airlines tickets, and/or printed itineraries, money orders and their receipts, parcel service receipts, wire transfer receipts, telephone and address books, cellular telephones, pagers, calling cards, caller ID units, computers, handwritten drug ledgers/pay-owe sheets, handwritten notes regarding courier instructions, handwritten notes regarding names and telephone numbers of criminal associates, receipts for distribution paraphernalia, luggage tags from prior airline travel, photographs/videos showing co-conspirators, associates, drugs, money and/or weapons, fraudulent identification, firearms and ammunition.

10. The facts set forth in this affidavit are based upon my personal observations, my training, and experience, and information I obtained from various law enforcement agents and others. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of every aspect of the investigation. Rather, I have set forth the facts that I believe are sufficient to establish probable cause for the

3


May 11 2021

issuance of the requested search warrant. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

11. Based on my training and experience, I know that people involved in the use, possession, manufacture, importation, and/or trafficking of controlled substances commonly possess and use cellular telephones, telephones, and computers to facilitate these activities. Regarding cellular telephones in particular, I know that drug traffickers will use cellular telephones to facilitate their activities because of the mobility offered by cellular telephones. Further, drug traffickers are attracted to cellular telephones because they enable suspects to avoid the risks attendant with operating from a fixed location. Additionally, cellular telephones afford spontaneous access to drug customers and to drug sources. Further, I know that cell phones used by drug traffickers frequently contain data stored within which includes the telephone numbers, names, and/or aliases of drug customers and drug sources. Further, I know that in addition to names and numbers, cell phones used by drug traffickers commonly contain images and recordings of people involved in trafficking, images of firearms used in these activities, images of controlled substances, and images of drug trafficking proceeds, and further that these images are often retained long after the images are captured.

12. Based on my training and experience, I know that people involved in the use, possession, manufacture, importation, and/or trafficking of controlled substances commonly engage in these activities at all hours of the day and night.

13. Based on my training and experience, I know that trafficking controlled substances is a cash business, and frequently very lucrative. Also based on my training and experience, I know that people involved in the possession, manufacture, importation, and/or trafficking of controlled substances commonly possess money generated by these activities, and further that these people commonly possess stolen property accepted in exchanges for controlled substances. Further, based on my training and experience, I know that people involved in the possession, manufacture, and/or distribution of controlled substances commonly maintain and possess firearms to protect themselves, their controlled substances, and their trafficking proceeds. Further, I know that the above described documents, money, stolen property, and firearms are commonly found in the vehicles and residences of drug traffickers, as well as in

4


May 11 2021

other places maintained for the trafficking of controlled substances, as well as lower profile locations sometimes referred to as "stash houses."

14. Based on my training and experience, I have become familiar with the practice of some drug traffickers in the use of express parcel shipping companies as a method of transporting illegal drugs into Alaska. Using this method, a drug trafficker will acquire drugs from a source state. The drugs will then be placed in a parcel, and arrangements will be made for shipment to Alaska via express shipping companies such as FedEx, UPS, and DHL. Traffickers will commonly provide fictitious information for the sender's name, address, and telephone number. Likewise, traffickers will commonly provide a fictitious name for the recipient, but will use a genuine receiving address to ensure delivery. The use of a nominee's address is common for receipt of the parcel, as many traffickers are reluctant to receive parcels at their own addresses. Some traffickers are willing to be present at the receiving address when the parcel arrives. Other traffickers will avoid the receiving address until after delivery of the parcel, and others will instead direct a nominee to transport the parcel to second or subsequent locations. Based on my training and experience, I know that the locations where parcels containing controlled substances are shipped to commonly hold evidence of drug trafficking.

15. As part of my duties as a Postal Inspector, I investigate drug trafficking organizations, including their smuggling routes and the techniques that they use for transporting controlled substances such as marijuana, cocaine, methamphetamine, and heroin. My duties include interviewing witnesses, victims and suspects, identifying people involved, developing probable cause, handling and processing various types of evidence, and assembling cases for prosecution.

16. I know that in United States v. Terry, F.2d 272 (9th Cir. 1990), United States v. Angulo-Lopez, 791 F.2d 1394,1399 (9th Cir.1986), United States v. Hernandez-Escargega, 886 F. 2d 1560, 1567 (9th Cir. 1989) and in United States v. Fannin, 817 F. 2d 1379, 1381-1382 (9th Cir. 1987), the court held that in the case of drug traffickers, evidence is likely to be found where dealers live and a search warrant may be properly issued against a suspected drug dealer's residence despite the lack of direct evidence of criminal activity at the residence. The court also held, in United States v. Cardoza, 769 F. 2d 625, 630 (9th Cir. 1985) that a search warrant may


May 11 2021

be properly issued to search a drug trafficker's storage locker despite lack of direct evidence linking the storage locker to criminal activity.

17. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned books, records and ledgers etc., are frequently maintained in the drug trafficker's residence, as well as in places where these activities take place, and sometimes in the traffickers' vehicle(s). Further, I know that these documents are often retained long after the transactions to which they refer have taken place.

18. It is common for members of drug trafficking organizations to conceal in their residences and businesses in strong boxes, safes, lock boxes, concealed compartments and hidden rooms, large quantities of US currency, foreign currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds from drug trafficking.

19. I know that evidence of excessive wealth is probative evidence of crimes involving greed, to include the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets themselves are evidence of drug trafficking. I also know that drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in or about their residences, and sometimes documentation of these assets in their vehicles or businesses.

20. It is common for members of drug trafficking organizations to utilize wire transfer companies, (i.e. Western Union, MoneyGram) to facilitate the movement of US currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee senders to disguise the origination of the funds and to break up the amount being sent by any one person. I know that the actual owner of the currency will commonly provide the nominee sender with hand-written information concerning the intended recipient's name, intended pay-out location and amounts of money to be sent. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee senders to maintain copies of the wire transfer receipts, amounts sent and

6

Case 1:21-mj-00054-MMS   Document 1-1   Filed 05/11/21   Page 6 of 12



tracking numbers. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, businesses, and vehicles.

21. It is common for members of drug trafficking organizations to utilize direct cash deposits into a co-conspirator's bank accounts to facilitate the movement of US currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee depositors to disguise the origination of the funds and to break up the amount being deposited by any one person. I know that the actual owner of the currency will commonly provide the nominee depositor with hand-written information concerning the intended recipients name and account number and amounts of money to be deposited. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee depositors to maintain copies of the deposit slips. I also know that the aforementioned items are frequently maintained in the drug trafficker's and/or nominee depositor's residence, businesses, or vehicles.

22. It is common for members of drug trafficking organizations to utilize express parcel delivery services, (i.e. FedEx, United Parcel Service, DHL, and US Postal Service Express Mail) to facilitate the movement of controlled substances and US currency throughout the trafficking organization's area of operations. I also know that, in an attempt to keep track of the packages and their contents, it is common for the trafficker to maintain copies of the shipping receipts and tracking numbers. Parcel companies all have websites where a customer can enter a tracking number to check on the status of a package. When the status is checked, the websites capture the IP Address of the user that checked on the package. That, in turn, can be used to determine the physical address or device that checked on the package. Thus, seizure of cellular telephones, computers, cable modems, and routers can provide evidence linking a suspect to a package containing drugs or money. I also know that members of drug trafficking organizations will utilize nominee senders/recipients to disguise the origination and destination of the packages. I know that the actual owner of the drugs/currency will commonly provide the nominee sender with hand-written information concerning the intended recipient's name and address. I also know that shipping receipts and tracking numbers are frequently maintained in the drug trafficker's residence, businesses, and vehicles. Computers, routers, and cable modems are frequently maintained in a drug trafficker's residence.

7

*[signature]* May 11 2021

23. It is common for members of drug trafficking organizations to utilize fraudulent identification, in order to purchase airline tickets, send wire transfers, rent residences and storage facilities and subscribe for telephone/cellular telephone service. I also know that it is common for drug traffickers to keep fraudulent identification nearby and easily accessible to facilitate their flight upon the discovery of their illegal activities by law enforcement. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, businesses, or vehicles.

24. It is common for drug trafficking organizations involved in the purchase, dilution, and repackaging of controlled substances for distribution to maintain equipment and supplies (i.e. scales, baggies, cutting agents) on hand over a lengthy period of time, even when they do not have any controlled substances on hand. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence or business. I have also found scales and packaging materials in traffickers' vehicles.

25. It is common for members of drug trafficking organizations to attempt to recruit couriers to transport drugs and/or US currency throughout the trafficking organization's area of operations. I know that often times the courier's handler will provide the courier with hand-written notes regarding travel itinerary, hotel information and contact telephone numbers prior to the courier departing on the trip to transport drugs and/or money. I also know that often times the organizations will pay a flat rate (i.e. $2,000 per kilogram of cocaine) plus expenses for the couriers. Therefore, oftentimes the couriers will keep handwritten itemized lists of expenses and/or receipts, in order to be reimbursed. I also know that the aforementioned items are frequently maintained in the courier's residence or residences and vehicles of members of the drug trafficking organization.

26. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry, luxury cars). I also know that the aforementioned items are frequently maintained in the drug trafficker's residence or business, and often on cellular telephones and computers found in the trafficker's residence.



May 11 2021

27. It is common for members of drug trafficking organizations to possess scanners, security cameras and communications equipment (i.e. cellular telephones and computers with Internet access) to protect and conceal their operation from law enforcement and other criminals and to monitor surveillance activities of law enforcement. Computer equipment is also used by members of drug trafficking organizations to store records related to drug trafficking and money laundering activities.

28. It is common for members of drug trafficking organizations to possess firearms and ammunition to protect their drugs, assets, and persons from rival traffickers, other criminals, and from law enforcement.

29. It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use pre-paid cellular telephones and pre-paid long distance calling cards. I know that often times the only way to connect a subject with a particular pre-paid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, business, or vehicles.

30. It is common for members of a drug trafficking organization to attempt to legitimize their profits from the distribution of drugs. To accomplish these goals, drug traffickers utilize foreign and domestic banks and the bank's attendant services to include cashier's checks, safe deposit boxes, and money drafts. Drug traffickers will also utilize the purchase/sale of real estate to legitimize their profits. I also know that the records of the aforementioned transactions are frequently maintained in the drug trafficker's residence, business, or vehicles.

31. It is common for members of drug trafficking organizations to utilize businesses, both real and fictitious, to conceal both the distribution of drugs as well as to conceal the source of their illegal income. It is common for drug traffickers to possess business licenses and articles of incorporation for these businesses, even if the businesses exist only on paper. I also know that these records and documents are frequently maintained in the drug trafficker's residence or business.

9


May 11 2021

## **PROBABLE CAUSE**

32.    The United States, including the Postal Inspection Service and Drug Enforcement Administration, is conducting a criminal investigation on Brenda OBoyle AKA Brenda Harkins or Brittney Haskell (hereinafter referred to as "Brenda OBoyle") and Robbie Lindsey as described more fully below, regarding violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession of controlled substance with intent to distribute) and 846 (conspiracy in relation to drug distribution).

33.    In April 2021, I received information from Juneau Police Department (JPD) regarding suspicious parcels destined to Juneau Alaska containing narcotics. These parcels are suspected to be addressed to either Airbnbs or Hotels in Juneau Alaska. Also, these parcels are suspected to be from Arizona with a printed label from business addresses. These address practices are used by narcotics traffickers to hide the true identity of the person(s) shipping and/or receiving the controlled substances from law enforcement officials.

34.    Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mails to ship controlled substances from one location to another. Based on experience and discussions, there are known source states from where controlled substances might be mailed, including California, Oregon, Washington, Arizona, Texas, Florida and Puerto Rico.

35.    These parcels containing narcotics are suspected to be destined to Brenda OBoyle for distribution around Juneau and Southeast Alaska. Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, narcotics traffickers will mail narcotics to bigger cities in Alaska for redistribution into smaller outline cities.

36.    In April 2021, a JPD Officer was investigating another crime in Juneau Alaska when he requested and was provided a hotel manifest from Frontier Suites. In the course of his


May 11 2021

investigation he provided the manifest to investigators in the narcotics unit. JPD Officer observed Brenda Oboyle's name on the Frontier Suites manifest.

37. April 6, 2021, a "Cocperating Defendant 1" ("CD-1") a known drug user/dealer, reported to JPD, Brenda Harkins has been selling a large amount of heroin, meth, and some cocaine. She exclusively uses the (dark web) postal service because it's safer and cost-effective. She gets her drugs shipped from Arizona and uses hotel addresses with a corporate name to make the parcel believable. She is getting a kilo of dope (unknown what kind) soon. Harkins drives an older teal-green Tahoe. Hankins is pushing the most weight in Juneau.

38. May 5, 2021 "Cooperating Defendant 2" ("CD-2"), a known drug user/dealer, reported to FBI Agents, Brenda Oboyle sells large amounts of Heroin and Methamphetamines from hotels. CD-2 said she believes Oboyle is currently at the Frontier Suites.CD-2 also stated that Robbie Lindsey sells narcotics and is associated with Brenda Oboyle.

39. On May 6, 2021, JPD Det. Lundquist and Wise spoke with, an employee with Frontier Suites Hotel, located at 9400 Glacier Hwy, Juneau, AK. The employee reported a lot of foot traffic going to James Robert Lindsey's (AKA: Robbie Lindsey) hotel room (Rm 2205). The employee said Lindsey and Brenda Oboyle appear to be good friends because they are always together. Lindsey attempts to pay for his room in cash and will pull out a large wad (Cash), but because of COVID, Frontier Suites are only accepting credit cards. Lindsey has recently paid with a Master Card.

40. Oboyle has stayed as a guest with Frontier Suites for a long time. She typically pays for multiple rooms. She'll buy one room for herself and other rooms for family members employee said she has never seen any of her family members. Employee stated, the family members only stay for two or three days, and then Oboyle checks out of the room.

41. JPD provided me with information that Lindsey was the suspect in a 2018 case, JPD case #180206-003, where over 378 gross grams of methamphetamine were found in a shipment going to Robbie and his girlfriend at the time. Robbie admitted his involvement with receiving the methamphetamine, cooperated with law enforcement and ultimately was not charged.

42. On May 11, 2021, JPD Detective requested and was provided the manifest for Frontier Suites. Detective observed Brenda Oboyle listed for room 2143 and Lindsey for 2205.

 May 11 2021

43.     Based on the information provided herein, I submit there is probable cause to search the TARGET ROOMS described in Attachment A, for the items described in Attachment B.

44.     On May 7, 2021, Assistant United States Attorney Jack Schmidt reviewed the Affidavit above and approved for United States Magistrate Judge reviewing.

Respectfully submitted,

Kevin Horne
U.S. POSTAL INSPECTOR

Subscribed and sworn pursuant to
Fed.R.Crim.P. 41 & 41(d)(3) on
May 11, 2021

UNITED STATES MAGISTRATE JUDGE

12